UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE COOKE | : | CIVIL ACTION NUMBER: |
| | : | |
| v. | : | |
| | : | |
| DANIEL SHAPIRO, | : | |
| DIANA ROSS, | : | |
| MILONE & MACBROOM, INC. | : | MARCH 8, 2019 |

COMPLAINT

The Parties

1. At all times pertinent hereto, Wayne Cooke, is and was a partner in entities that owned property in Branford, CT (hereinafter referred to as Hilltop Orchards), and a resident of Branford, Connecticut.

2. At all times pertinent hereto, the defendant Daniel Shapiro was Branford's Chairman of the Inland Wetlands Commission; he is being sued in his individual capacity and in his official capacity.

3. At all times pertinent hereto, the defendant, Diana Ross functioned as Branford's Inland Wetlands environmental director; she is being sued in her individual capacity and in her official capacity.

1

4. Milone & MacBroom, Inc. (hereinafter "MMI") is a Connecticut corporation located in Cheshire, Connecticut.

## Jurisdiction

5. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and § 1988 alleging violations of the First and Fourteenth Amendment to the United States Constitution, and a civil conspiracy to violate plaintiff's civil rights. It further alleges State claims for tortious interference with business relationships.

6. This court has jurisdiction pursuant to 28 U.S.C. § 1343, and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**COUNT ONE: First Amendment Retaliation (Shapiro and Ross)**

7. In and after January 2008, Wayne Cooke attended and participated in the Town of Branford's Planning and Zoning Commission's hearings for the Comprehensive Town Plan of Conservation and Development in order to safeguard the family's interests and provide for the future development of Hilltop Orchards.

8. In January, 2008, Hilltop Orchards was located in an area of the Town of Branford off of exit 56 off I-95 that was zoned for industrial (IG2) use and, as such, certain potential uses of the property, including large scale retail development, were prohibited.

9. Cooke sought to convince members of the Branford Planning & Zoning Commission, who were responsible for drafting and enacting the Comprehensive Town Plan of Conservation and Development, that retail development in the area of town near Exit 56 would be a benefit to the Town.

10. In 2008, Cooke was unable to persuade the Branford Planning & Zoning Commission to alter its Plan of Conservation and Development so that large scale retail development at Exit 56 would be encouraged.

11. During the course of such dealings with Branford town officials in 2008, Cooke became convinced that the town plan process was being subverted and manipulated by First Selectman Anthony DaRos to prohibit development at Exit 56.

12. During this time, DaRos expressed his belief that if a zoning change was made such that the industrial zone designation was replaced with a different designation, that would open the door for affordable housing developers to seek to build affordable housing projects in that area.

13. In public comments, DaRos, when referring to affordable housing developers, described such developers as "parasitic."

14. At that time, Cooke began to equate the way in which he believed the town planning process was being subverted in part out of a desire to block affordable housing projects at Exit 56, with earlier actions taken by Anthony DaRos as First Selectman of the Town of Branford to thwart an affordable housing development on property located on Tabor Drive in Branford, Connecticut.

15. In 2003, owners and potential developers of an affordable housing development on Tabor Drive had sued the town for a bad faith abuse of the eminent domain process in state court litigation known as New England Estates v. Town of Branford.

16. In his public comments and communications to Branford Town officials, Cooke began to make explicit comparisons between the way in which the DaRos administration had dealt with Tabor Drive, and the way DaRos was treating the question of whether to allow changes in the zoning classifications for land near Exit 56.

17. Specifically, Cooke began to compare actions by DaRos that the jury in the case involving Tabor Drive had found to be an abuse of power and that the Connecticut Supreme Court called "dishonest" to behavior by DaRos in dealing with the zoning issues surrounding Exit 56 and Hilltop Orchards, which behavior Cooke began to describe publicly as dishonest and an abuse of power.

18. In direct response to Cooke exercising his constitutionally-protected first amendment right to criticize local government officials, generally, and to criticize Anthony DaRos, specifically, DaRos embarked upon a series of retaliatory acts to punish Wayne Cooke.

19. In 2010, Wayne Cooke began to have discussions with representatives of Costco, a large national store chain about a possible development at Hilltop Orchards.

20. A representative of the company identified the Hilltop Orchards property, specifically the 573 East Main Street parcel, as ideal for its purposes.

21. DaRos undertook a series of steps to stop Costco from attempting to build a store on the Cooke property with the result that, in May 2011, Costco representatives officially notified Cooke that they were "not going to fight the Town" and would not negotiate further with Cooke concerning a development on the Cooke property.

22. As a result of these acts, Cooke sued DaRos in the United States District Court in an action title <u>Cooke v. DaRos, Et Al</u>, 3:12-CV-1617 (JBA).

23. Because of Cooke's effort to expose the mendacity of DaRos, a Democrat, DaRos left office.

24. The current Republican administration took office in 2013 and replaced many officials who had populated the DaRos administration.

25. Soon after the current administration took office, Charles Weber, a local real estate developer with land contiguous to Cooke's property, contacted Cooke to discuss a real estate development that would include placing a Costco store on the property owned by Cooke family entities at 573 East Main Street in Branford.

26. The NF&W Limited Partnership, a Connecticut limited partnership, and Cooke/Harrison Family Partnership, a Colorado limited partnership, entered into an agreement with Orchard Hill Partners, LLC, a Connecticut limited liability company which included Charles Weber as its managing member to sell the real property at 573 East Main Street, Branford to Orchard Hill for a planned development that would include a Costco store.

27. On February 18, 2015, Orchard Hill Partners LLC, 595 Corporate Circle, and Costco Wholesale Corporation filed an application with the Branford Planning and Zoning Commission for Planned Development District (PDD) approval. The properties involved were 569 East Main Street, 573 East Main Street, 16 East Industrial Road, 20 East Industrial Road, and 26 East Industrial Road.

28. On July 9, 2015, after several months of presentations and public hearings, the Branford Planning and Zoning Commission approved the PDD master plan application.

29. On September 9, 2015, Costco Wholesale Corporation and Orchard Hill Partners LLC filed an Inland Wetlands Commission (IWC) application for 573 East Main Street, in conjunction with two other applications for 569 East Main Street and 20 East Industrial Road.

30. In November 2015, the IWC selected Milone & MacBroom, Inc. to perform an independent peer review of the Costco application.

31. In December 2015, a group calling itself Branford Citizens for Responsible Development (BCRD) filed for intervenor status with the IWC.

32. This group was formed by and led by multiple former members of the DaRos administration, and/or supporters of DaRos for the single purpose of stopping Costco from placing a store on Wayne Cooke's property.

33. In response to a request by the applicant's engineers to have a meeting with the peer review team, Ross and Shapiro rejected the request citing the critical need to have an independent peer review with all communications with the peer review team made part of the public record, and writing that "the peer review team is not the applicants personal consultant."

34. From the date of that communication by Ross until the end of the peer review process, Ross and Shapiro communicated frequently with the peer review team, and transformed the independent peer review team into BCRD's personal consultant.

35. Through these communications, Ross and Shapiro conveyed to MMI the clear message that the goal of the peer review process was to create reasons to deny the application.

36. At various times, Ross and Shapiro reviewed the MMI work product and requested numerous additions and alterations of the MMI drafts.

37. In early March 2016, after receiving what MMI produced as its completed peer review report, Ross and Shapiro actually marked up, edited and re-drafted part of MMI's submitted report, and returned it to MMI for re-drafting.

38. During this time, Ross continually misled the applicants concerning the status of the report and kept far from the public record all of the afore-described communications with MMI.

39. MMI submitted the altered review document as its official peer review report on or about March 9 2016.

40. In this report, MMI incorporated an analysis of what it described as a feasible and prudent alternative the notion of reducing the size of the Costco store, an idea that MMI acknowledged came from Ross after it originated with BCRD.

41. In numerous other ways, MMI altered its original work product and adopted every edit, suggestion and re-write sent to them by Ross and Shapiro, changing its independent review from a critique that would have clarified certain manageable wetlands issues into a report that would kill the project.

42. The altered MMI report was put into the record at the Inland Wetlands Commission hearing of March 10, 2016.

43. During March, Cooke and Costco learned of the above-described manipulations, including the existence of the report marked-up, edited and re-written by Ross and Shapiro.

44. On or about March 24, 2016, the current administration began an investigation into the activities of Shapiro and Ross with regard to this peer review process.

45. At the April 7 IWC hearing, evidence of this manipulation was placed into the public record.

46. Branford's Inland Wetland's Commission scheduled a special meeting for April 28 for deliberations on the Costco applications.

47. In April, Shapiro reacted to his public exposure and to the fact that his term was expiring in May with an accelerated effort to stop Costco from building on Cooke's property.

48. Shapiro attempted to alter the Inland Wetlands regulations for Branford by pushing through regulations that would greatly increase the power of the IWC to deny applications.

49. On April 26, 2016, in the face of this corrupted review process and the continued determination by Shapiro to derail the Costco project, Costco withdrew its application.

50. At the April 28 special meeting, the IWC voted to delay a vote on the new regulations until it received a legal opinion from Town Counsel, and to reconsider the question at its May 12 meeting.

51. Diana Ross delayed sending the request for legal review from the IWC to Town Counsel until it was too late for such a review to occur before that meeting.

52. On May 12, 2016, the IWC ignored its previous vote to obtain a legal review, ignored the fact that the new regulations had language that had not been made available to the public for review and comment, and focused chiefly on the fact that several members' terms were expiring in May, including Shapiro's; Shapiro and his allies voted 4-3 to adopt the new regulations.

53. After the withdrawal by Costco, Orchard Hill, LLC did not purchase the property at 573 E. Main Street and that property remains unsold.

54. All of the acts as aforedescribed undertaken by the defendant Shapiro were done under the color and pretense of state law, and the charter, ordinances, regulations, customs and usages of the Town of Branford as Commissioner of the Inland Wetlands Commission.

55. All of the acts as aforedescribed undertaken by the defendant Ross were done under the color and pretense of state law, and the charter, ordinances, regulations, customs and usages of the Town of Branford as Inland Wetlands Environmental Director of Branford.

56. All the acts of Shapiro and Ross as aforedescribed were undertaken intentionally and deliberately to retaliate against Cooke for exercising his First Amendment right to

criticize Anthony DaRos specifically and the DaRos administration generally, in violation of Cooke's First Amendment rights and in violation of 42 U.S.C. § 1983.

57. As a direct result of this violation of his civil rights, Cooke has sustained damages including, but not limited to, the loss of the monies due under the aforedescribed contract with Orchard Hills Partners, LLC, and the diminution in value of development opportunities for Hilltop Orchards in the future.

**COUNT TWO: Equal Rights Violation (Shapiro and Ross)**

1-48. Paragraphs 7-55 of Count 1 are hereby incorporated as Paragraphs 1-48 of Count Two.

49. In acting as aforedescribed, Shapiro and Ross hijacked the normal inland wetlands peer review process to deprive the applicant from a fair review of its application so that no development would be built on property owned by Wayne Cooke.

50. Upon information and belief, in no other case involving the consideration of an inland wetlands application, has the Commission's chairman and the town's staff personally intervened in the peer review process to produce a review designed to scuttle a project including actually rewriting the peer reviewer's opinion.

51. Defendants acted as afore-described out of actual malice toward Wayne Cooke. There is no objectively reasonable basis for the defendants to have singled out Cooke for this treatment, and their actions are devoid of any legitimate government policy.

52. Such treatment was without any rational basis and violates the plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

53. As a direct result of this violation of his civil rights, Cooke has sustained damages including, but not limited to, the loss of the monies due under the aforedescribed contract with Orchard Hills Partners, LLC, and the diminution in value of development opportunities for Hilltop Orchards in the future.

**COUNT THREE: Tortious Interference with Business Expectancies (Shapiro, Ross and MMI)**

1-50. Paragraphs 7-56 of Count One are hereby incorporated and made Paragraphs 1-50 of Count Three.

51-55. Paragraphs 49-52 of Count Two are hereby incorporated and made Paragraphs 51-55 of Count Three.

56. At all times pertinent hereto, defendants Ross, Shapiro and MMI were aware that if the applicant's inland wetlands application was approved, that the applicants would purchase the property at 573 East Main St., Branford to the financial benefit of Wayne Cooke.

57. The defendants acted with improper motive, through the use of improper means, and with malice, as part of an immoral and unscrupulous scheme to attempt to deprive the plaintiff of the benefits of his business expectancy by producing a peer review report that did not reflect an independent review of the application based upon the evidence adduced

through the public hearings before the IWC, but rather furthered Shapiro's and Ross's agenda of scuttling a project that would benefit Wayne Cooke.

58. As a result of this conduct, Cooke suffered damages when Costco withdrew its application on or about April 26, 2016, including, but not limited to, the loss of the monies due under the aforedescribed contract with Orchard Hills Partners, LLC, and the diminution in value of development opportunities for Hilltop Orchards in the future.

**COUNT FOUR: Civil Conspiracy (Shapiro, Ross and MMI)**

1-57. Paragraphs 1-57 of Count Three are hereby incorporated and made Paragraphs 1-57 of Count Four.

58. In acting as aforedescribed to violate Cooke's civil rights and to tortuously interfere with Cooke's business expectancies, Ross, Shapiro and MMI acted together to further the objective of injuring Wayne Cooke by stopping the Costco development.

59. Cooke has suffered damages as a result of this civil conspiracy, including, but not limited to, the loss of the monies due under the aforedescribed contract with Orchard Hills Partners, LLC, and the diminution in value of development opportunities for Hilltop Orchards in the future.

WHEREFORE, the plaintiff seeks:

a. A trial by jury;
b. Monetary damages;
c. Attorney's fees and costs of this action; and
d. Such other relief as may pertain in law as equity.

PLAINTIFF, WAYNE COOKE

BY/ss/David S.Doyle
David S. Doyle
Federal Bar No.: ct02987
The Marcus Law Firm
275 Branford Road
North Branford, CT 06471
Tel.: (203) 481-3330
Fax: (203) 488-4070
ddoyle@marcuslawfirm.com