### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

THE NF&W COOKE L.P., ET AL.,
*Plaintiff(s)*,

v.                                              No. 3:19-cv-371 (VAB)

DANIEL SHAPIRO, ET AL.,
*Defendant(s)*.

### RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Wayne Cooke, in his individual capacity and in his capacity as trustee of the Wayne
Cooke Family Trust, and the NF&W Cooke Limited Partnership, (collectively, "Plaintiffs")
bring this action against Daniel Shapiro, individually and in his official capacity as chairman and
member of the Town of Branford Inland Wetlands and Watercourses Agency, and Diana Ross,
individually and in her official capacity as Inland Environmental Director of the Town of
Branford.

Mr. Cooke claims that the Defendants denied, or played a role in denying, an application
for the development of property, located at 573 East Main Street in the Town of Branford (the
"Town") Connecticut, in violation of his federal constitutional rights, and rights under
Connecticut law.

Following the close of discovery, the Defendants have moved for summary judgment as
to all of Mr. Cooke's claims.

For the following reasons, Defendants' motion for summary judgment is **GRANTED in
part** and **DENIED in part.**

Summary judgement is **GRANTED** as to the equal protection claim.

Summary judgement is **DENIED** as to the First Amendment retaliation claim, the

1

tortious interference with business expectancies claim, and the civil conspiracy claim.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[1]

The property at issue, 573 East Main Street in the Town of Branford, has allegedly been owned for years by Mr. Cooke's family and NF&W Cooke Limited Partnership ("NF&W"). Pl. Mem. of Law in Opposition to Motion for Summary Judgement, ECF No. 123 at 1 ("Pl. Opp"). This property ("Property" or "Cooke Property") was part of an Inlands and Wetlands Application that is central to the disputes in this case. Pl. Statement of Facts at 1. The applicant for this Inlands and Wetlands Application was Costco Wholesale Corporation ("COSTCO") and the application was received at the November 12, 2015, meeting of the Inland and Wetlands Commission. *Id.*

Years before this application's submission, around 2008, Mr. Cooke allegedly began appearing before Town boards and commissions "to advocate for updates to the Town's Plan of Conservation and Development ("POCD") that would facilitate the possibility of development of the Cooke Property." Pl. Opp at 1. The Property is allegedly zoned as General Industrial ("IG2"), which "prohibits retail, residential and business uses in the underlying zone, and has historically been used as a farm." *Id*.

Mr. Cooke allegedly had no success in convincing the Town to "consider legislative changes to the POCD as it related to the Cooke Property and the IG-2 Zone." *Id.* Allegedly, the Town's first Selectman at that time, Anthony DaRos ("DaRos") opposed changes to the Town's zoning map and the Cooke Property's IG2 designation. *Id.* at 1–2. Mr. DaRos allegedly "publicly

---

[1] The facts are taken from the parties' submissions, including the Local Rule 56(a)2 Statement of Facts In Opposition to Summary Judgement, ECF No. 123-1 at 1 ("Pl. SMF").

voiced his concern that converting industrially zoned property to residential and/or retail would open the flood gates to affordable housing developments throughout the Town." *Id.* at 2. Mr. Cooke allegedly became convinced that Mr. DaRos was trying to prevent the Cooke Property development in the same way that Mr. DaRos had tried to prevent an affordable housing development. *Id.* Mr. Cooke allegedly then began "making public comments that were extremely critical of DaRos and his administration and became a thorn in their sides." *Id.* Around 2010, COSTCO allegedly approached Mr. Cooke regarding a potential COSTCO store on the Cooke Property. *Id.* Mr. DaRos allegedly attempted to "steer the COSTCO project to other areas of the Town." *Id.* Allegedly because of those actions, COSTCO notified Mr. Cooke in 2011 that it would no longer "fight the town" or negotiate anymore for the proposed COSTCO store on the Cooke Property. *Id.*

Also around 2010, Mr. DaRos and Barbara Neal, who was the Town's Tax Assessor, allegedly "began to raise issues about the farming designation of the Cooke Property." *Id.* Mr. Cooke allegedly believed that Mr. DaRos and Ms. Neal were seeking to lift tax exemptions that applied to the Cooke Property "as retaliation against Cooke for speaking against DaRos and his administration at public meetings." *Id.* at 3. Allegedly in response, Mr. Cooke sued Mr. DaRos and Ms. Neal. *Cooke v. DaRos*, et al., 3:12-CV-1617 (JBA). Mr. Cooke also sued Mr. DaRos allegedly for slander in Connecticut State Court. *Cooke v. DaRos*, Docket No. CV-12-6034370. Both cases were settled. Pl. Opp at 3.

In 2013, Jamie Cosgrove succeeded Mr. DaRos as First Selectman, and allegedly during his campaign, Mr. Cosgrove expressed support for "the possible development of a COSTCO store at Exit 56." *Id.* After Mr. Cosgrove had become First Selectman, Cooke allegedly entered into an Option Purchase Agreement ("Option Contract") with Orchard Hill Partners, LLC

("Orchard Hill") to sell the Cooke Property for $5,598,901.70. *Id.* This purchase was allegedly contingent on the buyer obtaining the necessary approvals to develop a COSTCO store. *Id.* at 3–4.

In 2015, COSTCO and Orchard Hill allegedly submitted applications to the Town's Planning and Zoning Commission ("PZC") for approval to develop a COSTCO store on the Cooke Property. *Id.* at 4. On July 9, 2015, the PZC allegedly approved the master application. After obtaining approval from the PZC, COSTCO and Orchard Hill allegedly submitted applications to the Town's Inland Wetlands and Watercourses Commission. *Id.* These applications were allegedly first filed in September 2015, then withdrawn and refiled in November 2015—which is the application at issue in this case. *Id.* While this application was pending, Daniel Shapiro, the Chairman of the PZC, allegedly "had deep animosity toward Cooke" and knew the Cooke Property was involved in the COSTCO Application but did not recuse himself from considering the application, and he "undertook efforts that were designed to delay frustrate, and ultimately manufacture purported grounds for a denial of the COSTCO Application." *Id.*

The Inland Wetlands and Watercourses Commission hired engineering firm Milone & MacBroom ("M&M") to allegedly "perform an independent peer review and provide independent expert advice to the Commission concerning the COSTCO Application." *Id.* at 5. Mr. Shapiro and Diana Ross (another Commission member) allegedly prevented COSTCO's team from meeting with M&M. *Id.* This allegedly resulted in the peer review report by M&M in December 2015 to consist "mostly of questions and requests for additional information." *Id.* In January 2016, public hearings regarding the COSTCO application began, *id.*, but M&M's final

report was provided on March 9, 2016, after Mr. Shapiro and Ms. Ross had allegedly communicated with M&M and suggested changes to the report. *Id.* at 5-6.

At the end of March 2016, local reporter Steve Mazzacane ("Mazzacane") allegedly "noticed inconsistencies in statements Ross had made about some information that was included in the final peer review report about a possible reduction in the size of the proposed COSTCO store." *Id.* at 6. After a Freedom of Information Act Request, the Town of Branford allegedly "produced documents which revealed that Ross and Shapiro, working together, had interfered with the peer review process and reviewed drafts of the M&M Peer review report that they insisted M&M give to them before finalizing the report, and then had directed M&M to make substantive changes." *Id.* These changes were allegedly "less favorable to the COSTCO Application and were intended and designed to change the peer review report to include things that the Commission could refer to in order to deny the Costco Application." *Id.*

Additionally, on January 6, 2016, Ross was allegedly already communicating with Town Attorney Penny Bellamy about a resolution that would deny the COSTCO application." *Id.* at 13. On February 23, 2016, Mr. Ross allegedly sent an e-mail to M&M employees with an article attached that described "how a public agency can conduct deliberations leading to a motion to deny an application with reasons that would withstand legal scrutiny." *Id.*

On April 16, 2016, the Inland Wetlands and Watercourses Commission allegedly did not reject the M&M report. *Id.* at 14. On April 26, 2016, counsel for Costco withdrew the COSTCO Application in a letter that stated:

> We have previously expressed to the Commission specific concerns about the manner in which this application has been reviewed and processed by wetlands staff. Although we continue to believe that the record is very clear that the pending application fully complies with all applicable regulations and state guidance documents, we remain concerned that the important issues Costco has raised have

not been fully resolved. Accordingly, Costco Wholesale Corporation respectfully withdraws the pending inland wetlands permit application IW#15.11.01, effective immediately.

*Id.* at 14-15; Exhibit by Wayne Cooke, ECF No. 124-5.

**B. Procedural History**

On March 11, 2019, Mr. Cooke filed his Complaint against Daniel Shapiro, Diana Ross, and Milone & MacBroom, Inc. Complaint, ECF No. 1.

On May 17, 2019, Defendants Daniel Shapiro and Diana Ross filed their answer and affirmative defenses. Answer, ECF No. 16.

On May 17, 2019, Defendant Milone & Macbroom, Inc. also moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Motion to Dismiss, ECF No. 17.

On December 11, 2019, Defendant Milone & Macbroom Inc. was voluntarily dismissed. Stipulation of Dismissal, ECF No. 33.

On October 1, 2020, Mr. Cooke filed an Amended Complaint that added the following parties as plaintiffs: the NF&W Cooke Limited Partnership and Wayne Cooke, individually and as trustee of the Wayne Cooke Family Trust; and following parties as defendants: Daniel Shapiro, individually and in his official capacity as chairman and member of the town of Branford inland wetlands and watercourses agency, a/k/a inland wetlands and watercourses commission, f/k/a inland, wetlands agency, and Diana Ross, individually and in her official

capacity as inland environmental director of the town of Branford. Amended Complaint, ECF No. 80.

On March 12, 2021, Defendants filed an Answer to this Amended Complaint. ECF No. 76.

On April 28, 2023, Defendants Diana Ross and Daniel Shapiro moved for summary judgement. ECF No. 119.

On June 2, 2023, Plaintiffs filed a response. ECF No. 123.

On June 30, 2023, Defendants filed a reply to Plaintiffs' response. ECF No. 127.

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

7

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary

judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

Plaintiffs have alleged four claims against the various Defendants: (1) a First Amendment retaliation claim, (2) an equal protection claim, (3) a tortious interference with business expectancies claim, and (4) a civil conspiracy claim.

The Court will address each of these claims in turn.

### The First Amendment Retaliation Claim

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Defendants raise two arguments in defense of the Plaintiffs' First Amendment retaliation claim: (1) the existence of a release foreclosing this claim; and (2) even if the release does not foreclose this claim, they are entitled to qualified immunity.

The Court will address each argument in turn.

### a.   The Release

In their motion for summary judgement, Defendants argue that Plaintiffs cannot prove that their actions were motivated or substantially caused by Plaintiffs' exercise of free speech, and that because this is an essential element of a First Amendment Retaliation claim, the claim must fail. They argue that the factual allegations are based on the animus that DaRos may or may

not have had towards Mr. Cooke and any allegations that are related to this are barred by the

release[2] that Mr. Cooke signed when he settled two earlier cases against DaRos.

They argue that "the only factual allegations that in theory could possibly show that the

Defendants argue that many of the allegations in Plaintiffs' current claims are identical or

substantially similar to the allegations in the claims that Plaintiffs discharged in an earlier

settlement. Mot. for Summary J. at 7.

They argue that "the only factual allegations that in theory could possibly show that the

Defendants' actions were motivated by Mr. Cooke's exercise of his first amendment right to free

speech, speaking out against the former First Selectman DaRos, have been released[.]" Mot. for

---

[2] The Release states, in pertinent part, that:

> Wayne Cooke . . . hereby agrees to release and forever discharge the TOWN OF BRANFORD including all departments, affiliated divisions, and its organizations of any kind, as now or hereafter to be constituted or acquired, and including all present, past or future appointed or elected officials, boards, board members, commissions, commission members, officers, representatives, attorneys, employees, and volunteers, ("the Town"), and including ANTHONY DAROS, individually and in his capacity as Branford First Selectman, BARBARA NEAL, individually and in her capacity as Branford Tax Assessor and all of their insurers, and their insurers' past, present and future officers, directors, agents and employees, (hereinafter collectively referred to as "Releasees") from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, claims for economic loss and pecuniary loss including but not limited to claims for bodily and/or physical injuries, costs, claims for attorneys' fees, indemnity, contribution, losses of services, expenses and compensation of any nature whatsoever, whether based in tort, contract, statutory, or civil rights or other theory of recovery, whether known or unknown, which [Wayne Cooke] has now, or which may hereafter accrue or otherwise be acquired, on account of, or in any way arising out of the facts, allegations, subject matter and claims that were asserted or could have been asserted in the two civil actions filed by [Wayne Cooke] against one or more of the Releasees captioned (1) WAYNE COOKE V. ANTHONY DaROS, FIRST SELECTMAN and BARBARA NEAL, TAX ASSESSOR, pending in the United States District Court and bearing docket number 3:12-CV-01617-JBA; and (2) WAYNE COOKE V. ANTHONY DaROS bearing docket number NNH CV12 6034370 S and pending in the Judicial District of New Haven[.]"

Pl. Mem at 21.

Summary J. at 9. In other words, Defendants argue that Plaintiffs cannot prove the second

element of a First Amendment claim because the proof required is barred by the release.

In response, Plaintiffs make four arguments. First, he argues that the release does not

name Ross or Shapiro, who were not parties to the lawsuit and thus nothing against Ross or

Shapiro was released. Second, Plaintiff argues that this case arises out of events that occurred

after the execution of the release, which was on October 31, 2014. Third, Plaintiffs argue that

NF&W did not sign the Release and was not a party, so it cannot be barred from pursing claims.

Fourth, Plaintiffs argues that any ambiguity in the language of the release should not be decided

in a summary judgment motion because it is an issue of fact to be resolved by a jury.

More specifically, Plaintiffs argue that this record shows that Mr. Shapiro "harbored

significant animus toward Cooke,[3] but despite that animus, Shapiro did not recuse himself from

consideration of the COSTCO Application." Pl. Mem. at 18. And a jury could "infer that Shapiro

predetermined the outcome of the COSTCO Application, and that he used Ross as a vehicle to

manufacture purported grounds for denial of the Application through manipulation of the peer

review process and improper alteration of what was supposed to be an independent peer review

report." *Id.*

The Court agrees.

"Under Connecticut law, a court must construe the language of a written contract to give

effect to 'the intent of the parties,' which a court determines 'from the language used interpreted

in the light of the situation of the parties and the circumstances connected with the transaction.'

---

[3] "During the time the Costco Application was pending before the Commission in 2015 and 2016, Shapiro had great animosity and bias against Cooke. Shapiro felt that Cooke was an idiot; that Cooke was crazy; that Cooke had a sick and twisted mind; that Cooke had ruined his family business; and that Cooke was a "true Branford hillbilly with low intelligence." Ex. 7 (Shapiro Tr. at pp. 48–49, 50–68); Ex. 34 (Shapiro text messages)." Pl. Statement of Additional Material Facts, ¶ 5, ECF No. 123-1.

In doing so, a court must accord the language 'common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract.' If the language is 'clear and unambiguous, the contract is to be given effect according to its terms.'" *Crabtree v. Hope's Windows, Inc.*, No. 3:17-CV-01709 (VAB), 2018 WL 2436992, at *6 (D. Conn. May 30, 2018) (citing *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 290 (2004)) (internal citations removed).

While the release does not name Ross or Shapiro and thus claims against them were not discharged, the release broadly applies and Mr Cooke did "agree[ ] to release and forever discharge the Town of Branford including all departments including all departments, affiliated divisions, and its organizations of any kind, as now or hereafter to be constituted or acquired, and including all present, past or future appointed or elected officials, boards, board members, commissions, commission members . . ." Pl. Mem at 21. As commission members, Ms. Ross and Mr. Shapiro did not need be mentioned by name for the release to apply to them because it is clear that the intention of the release is to include commission members. *Muldoon v. Homestead Insulation Co.*, 231 Conn. 469, 482 (1994) ("The intention of the parties, therefore, controls the scope and effect of the release, and this intent is discerned from the language used and the circumstances of the transaction"). The only people specifically named in the release are DaRos and Neal, and they are at the end of a long list that ends with "and including" which means the parties intended for it to cover what it listed prior to naming DaRos and Neal.

But "[e]xcept in very rare instances, the settlement and release of a claim does not cover claims based on events that have not yet occurred." *Id.* at 481 (citing *Blakeslee v. Water*

12

*Commissioners*, 121 Conn. 163, 185, 183 A. 887 (1936); *see also Crabtree v. Hope's Windows, Inc.*, No. 3:17-CV-01709 (VAB), 2018 WL 2436992, at *7 (D. Conn. May 30, 2018).

Here, the alleged retaliatory actions were Shapiro and Ross interfering with the COSTCO Application process—events that occurred after the release was signed in 2014. While Plaintiff's allegedly protected speech did occur before the release was signed, the allegedly retaliatory action did not occur until 2015 and 2016, while the COSTCO Application was pending. Given that the retaliatory action had not yet occurred, the release could not cover claims based on those events. *Duni v. United Techs. Corp./Pratt & Whitney Aircraft Div.*, 239 Conn. 19, 28 (1996) ("The stipulation's preclusion of 'future . . . claims . . . resulting out of the said injury . . . ' did not foreclose a future claim based upon a subsequent, although similar, injury.").

Accordingly, because the release does not cover any of the alleged acts after its signing, the release does not bar Plaintiffs' First Amendment retaliatory claim here.

### b.  Governmental Immunity[4]

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) and *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). A right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

---

[4] Having decided, as a matter of law, that the release does not cover events after its signing, the Court need not reach the other arguments raised by the parties, such as whether the release extends beyond Mr. Cooke to his related entities, and whether any ambiguity as to the release's scope should be determined by the jury in any event. This last issue—the release's potential ambiguity—further justifies not granting summary judgment based on the allegedly plain language of the release.

There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

"If a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). "Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation." *Turner v. Connecticut Lottery Corp.*, No. 3:20-CV-1045 (VAB), 2021 WL 4133757, at *17 (D. Conn. Sept. 10, 2021) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

"In considering qualified immunity on a motion to dismiss, the court draws all reasonable inferences in favor of the plaintiff both from the facts alleged in the complaint that support the

plaintiff's claim and those that would defeat the qualified immunity defense." *Turner,* 2021 WL 4133757, at *17 (citing *Hyman v. Abrams*, 630 Fed. App'x 40, 42 (2d Cir. 2015)).

Defendants argue that they are entitled to qualified immunity because it was not "clearly established" that their actions towards COSTCO during the Inland & Wetlands Application process violated Plaintiffs' First Amendment rights. Mot. for Summary J. at 10.

Plaintiffs argue that the Defendants' conduct violated the law by denying the COSTCO Application a fundamentally fair hearing, and that a reasonable person in the Defendants' positions would have a clear understanding that such conduct was illegal. Pl. Mem at 25–26.

The Court agrees.

If, in fact as alleged, Defendants interfered with the COSTCO Application because they harbored animosity against Plaintiff, then allowing such animosity to guide a decision rather than evaluating the application based on unbiased procedure would be something a reasonable person would know is clearly retaliatory. *Clark v. Boughton*, No. 3:21-CV-1372 (SRU), 2022 WL 4778582, at *16 (D. Conn. Oct. 3, 2022) ("[R]ights to criticize a public official, and to be free from retaliation for doing so, have long been protected by the First Amendment.") (citing *Huminski v. Corsones*, 396 F.3d 53, 73 (2d Cir. 2005) (recognizing a right to criticize a public official). "Indeed, the Supreme Court has long recognized a citizen's right to criticize a public official in general and a citizen's right to do so before a legislative committee in particular." *Clark*, 2022 WL 4778582 at *16 (citing *Perry v. Sindermann*, 408 U.S. 593, 598 (1972) (holding that critical legislative committee testimony is a protected First Amendment activity)). "Moreover, it was clearly established at all relevant times that retaliation against constitutionally-protected expression is an infringement of a person's First Amendment right." *Clark*, 2022 WL 4778582 at *16 (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that

as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out.")). "It was also clearly-established that retaliation against constitutionally-protected expression that causes pecuniary harm is an infringement of a person's First Amendment right." *Clark*, 2022 WL 4778582 at \*16 (citing *Sindermann*, 408 U.S. at 597–98 (collecting cases establishing that it is unconstitutional for the government to deprive a person in retaliation for exercising their First Amendment rights, even if the deprivation is to a mere benefit, because such a denial would unlawfully "interfere[ ] with constitutional rights")).

Accordingly, the motion for summary judgement as to First Amendment retaliation claim will be denied.

### B.  The Equal Protection Claim

"When a plaintiff alleges an equal protection violation (without also alleging discrimination based upon membership in a protected class), the plaintiff must plausibly allege that he or she has been intentionally treated differently from others similarly situated and no rational basis exists for that different treatment . . . Such a claim, often referred to as a 'class of one' equal protection claim, stems from the Equal Protection clause's requirement that the government treat all similarly situated people alike." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) and *Neilso' v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008)). "[T]o succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and

difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). The Second Circuit has emphasized the high bar that the class of one claim requires. *See Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) ("We held that, '[i]n order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high.' More precisely, a plaintiff must establish that he and a comparator are 'prima facie identical' . . . We explained that the existence of highly similar circumstances provides the basis for 'infer[ring] that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain.'") (citations omitted).

Defendants argue that Plaintiff's equal protection claim fails both under the "similarly situated" theory and under the "class-of-one" theory. Mot. for Summary J. at 12. They argue that the inland wetlands peer review process did not deprive the Applicant of a fair review of the Application and that Plaintiffs "were not subjected to unique or individualized treatment by the Town of Branford, as they received the same type of scrutiny and procedural mechanisms as a highly similarly situated individual seeking to have an Inland & Wetlands Application granted would." *Id*. at 18–19. Defendants further argue that the M&M project manager's and engineer's statements prove that the review of the COSTCO application was a fair process and that there was no evidence that the process was tainted or hijacked by anyone from the Commission. *Id.* at 13–19.

In response, Plaintiffs argue that under a "class-of-one" theory, they were intentionally treated differently from others similarly situated. Pl. Mem. at 23. They argue that the treatment of his other property to Branford YMCA demonstrates this. *Id.* Plaintiffs' family sold a portion

17

of their property to the Branford YMCA so that the YMCA could construct a facility on the

property. *Id*. The YMCA also needed to file an application with the Inlands and Wetlands

Commission before constructing the facility. *Id.* The Commission, however, did not hold a

public hearing on the YMCA Application or require a third-party peer review. *Id.* at 24. Plaintiffs

argue that this difference in treatment between the two properties raises a genuine issue of

material fact as to whether the COSTCO Application was treated differently. *Id.*

      The Court disagrees with Plaintiffs.

      The "class of one" theory requires proof that no other property would have been treated

this way. "To succeed on such a claim, plaintiffs 'must show an extremely high degree of

similarity between themselves and the persons to whom they compare themselves.'" *Progressive*

*Credit Union*, 889 F.3d at 49. This high standard cannot be met by pointing to one other property

that was treating differently. Instead, the applicable proof would have been analysis of a number,

if not all, of the applications submitted to the commission over a course of years.

      In other words, it is not clear how a reasonable jury could be "all but certain[,]" *Hu*, 927

F.3d at 92, that Plaintiff was the only one treated differently based on the treatment of one other

property. Furthermore, this Court has noted that different properties are almost always treated

differently in land-use contexts. *See Ward v. Town of N. Stonington*, No. 3:20-CV-00124 (VAB),

2023 WL 2563212, at \*9 (D. Conn. Mar. 17, 2023) ("As at least one court in this District ha[s]

recognized, *see Musco Propane, LLP v. Town of Wolcott*, 891 F.Supp.2d 261 (D. Conn. 2012),

consistent with guidance from the First Circuit '[t]he similarly situated requirement must be

enforced with particular rigor in the land-use context because zoning decisions will often,

perhaps almost always, treat one landowner differently from another.' *Cordi-Allen v. Conlon*,

494 F.3d 245 (251 (1st Cir. 2007). Although this holding is not binding on this Court, as my

colleague, the Honorable Janet Hall, noted in her opinion in *Musco Propane, LLP*: 'The Second Circuit cited this passage from *Cordi-Allen* with approval in *Mattison v. Black Point Beach Club Association*, 376 Fed. Appx. 92, 94 (2010).' 891 F. Supp. 2d at 272.")

Even if Plaintiffs had a viable equal protection claim, there would still remain the issue of whether these Defendants would be entitled to qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) and *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). A right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Defendants argue that they are entitled to qualified immunity under Section 1983 because it was not "clearly established" that acting in the way they did towards COSTCO during the

Inland & Wetlands Application process violated Plaintiffs' equal protection rights. Mot. for Summary J. at 20.

Plaintiffs argue that the Defendants' conduct violated the law by denying the COSTCO Application a fundamentally fair hearing, and that a reasonable person in the Defendants' positions would have a clear understanding that such conduct was illegal. Pl. Mem. at 25–26.

The Court disagrees.

Even if the Court had not dismissed the equal protection claim as a matter of law, the law is not clearly established such that the comparison of the property at issue with one other property would be sufficient to satisfy the rather rigorous "class of one" standard. *See Harenton Hotel, Inc. v. Vill. of Warsaw*, 749 F. App'x 17, 19 (2d Cir. 2018) ("A court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation . . . where no reasonable jury could find that the [projects] to [which] the plaintiff compares [its project] are similarly situated." (citing *Clubside*, 468 F.3d at 149)).

Accordingly, the motion for summary judgement as to the equal protection claim will be granted.

### C.  The Tortious Interference with Business Expectancies Claim

"A successful action for tortious interference with business expectancies requires the satisfaction of three elements: '(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss.'" *Am. Diamond Exch., Inc. v. Alpert*, 101 Conn. App. 83, 90 (2007) (*quoting Hi–Ho Tower, Inc. v. Com–Tronics, Inc*., 255 Conn. 20, 27 (2000)). "A cause of action for tortious interference with a business expectancy requires proof 'that the defendant was guilty of fraud, misrepresentation,

intimidation or molestation; [citation]; or that the defendant acted maliciously.'" *Jones v. O'Connell*, 189 Conn. 648, 660 (1983) (citing *Busker v. United Illuminating Co.*, 156 Conn. 456, 461 [1968]; *Skene v. Carayanis*, 103 Conn. 708, 715 [1926]; and *Goldman v. Feinberg*, 130 Conn. 671, 675, 37 A.2d 355 [1944].").

Defendants argue that Plaintiffs have not presented any evidence that Mr. Shapiro or Ms. Ross acted with malice to interfere with plaintiffs' business expectancy, Mot. Summary J. at 21, and that Mr. Cooke did not speak at the hearings or to any commission member regarding the Costco Application. *Id.* Defendants also argue that Shapiro and Ross "conducted the Inland & Wetlands Application process in a fundamentally fair fashion." *Id.* at 22.

In response, Plaintiffs argue that Defendants intentionally interfered with the business relationship that Plaintiff had with Orchard Hill—the business relationship that developed the Option Contract for the sale of the Cooke Property on which a COSTCO store would be built. Pl. Mem. at 27. Plaintiffs allege that Shapiro and Ross's interference with the M&M peer review report led to COSTCO withdrawing its application which nullified the Option Contract, and lost Plaintiff millions of dollars in money from the sale. *Id.* at 28.

The Court agrees.

A jury may be able to find that the first element is satisfied because of the evidence that Plaintiffs had a business relationship with Orchard Hill and COSTCO, given the Option Contract for the sale of Plaintiffs' property.

A jury also may be able to find that based on the evidence in the record that Defendants knew about Plaintiffs' business relationship with COSTCO and intentionally interfered to sabotage the Option Contract. *See Schoenster v. Stevens Ford, Inc*, No. CV054003279S, 2007 WL 2597495, at *3 (Conn. Super. Ct. Aug. 23, 2007) (the evidence of whether the defendants

knew about the contract was in dispute so "summary judgement is inappropriate at this time" and "must be submitted to the finder of fact"); *cf. One Barberry Real Est. Holding, LLC v. Maturo*, No. 3:17-CV-00985 (KAD), 2021 WL 4430599, at \*24 (D. Conn. Sept. 27, 2021) ("[T]he record does not afford a sufficient basis for the factfinder to conclude that Defendants were aware of a specific contract with which they interfered—a necessary precondition to a tortious interference with claim—as the record fails to identify the existence of any contract between Plaintiffs and their customers or any other party.").

A factual issue as to the second element exists because the parties dispute that Defendants knew of this relationship and interfered with the process so that the Option Contract would fail. *See id.* In other words, the parties dispute whether Ross and Shapiro requested and directed numerous changes to the peer review report, a factual question for a jury to decide. *See Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 545 (2d Cir. 2010) and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000))).

Most of Plaintiffs' claim rests on evidence that Ms. Ross interfered with the independent review process which caused them to deny the application. Evidence whether and to what extent Ms. Ross did so is disputed. For example, Senior Project Manager Darin Overton for M&M, the engineering firm hired to perform an independent peer review "admitted that he never felt coerced by anyone to steer the application towards a denial and said, if anything, as an engineer who works on a majority of site development projects on the other side of this where he is trying to get projects approved, his peer reviews, if he has any bias, is towards working with the applicant and relaying relevant information so that a project is consistent with the regulations and

the commission is in a position where it has the ability to approve it should it wish to." Def. Statement of Facts ¶ 20. Plaintiffs objected to this assertion and asserted that Overton "could not explain why Ross had sent her email and article to him and said that he did not recall discussions with her about that." Pl. Statement of Facts at 7. The parties dispute whether Ross and Shapiro requested and directed numerous changes to the peer review report, a factual question for a jury to decide. *See Proctor* 846 F.3d at 608 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Kaytor*, 609 F.3d at 545 and *Reeves* 530 U.S. at 150)).

As to the requirement that Defendants acted maliciously, the parties also dispute whether it was Shapiro's animus towards Cooke that caused him to push for denial of the application, instead of giving it a fair review. For example, Plaintiffs assert that "Shapiro had decided in 2015 and 2016 not to approve the Costco Application." Pl. Statement of Additional Material Facts ¶ 8. This is, in part, based on a text from 2018, in which Mr. Shapiro says the following: "I never did anything wrong to Costco. Costco never preferred an application that was consistent with our regs. I only ever acted to protect the Commission. Cooke is an idiot and you are more than rude to continue discussing." Shapiro Deposition at 52, ECF No. 124-7. In his deposition, Mr. Shapiro was asked "Did you decide at some point that Costco application was not consistent with the regulations in Branford?" Mr. Shapiro responded "No, we never got to deliberate on it . . . Well nothing was ever approved, so, you know, I can't say that they ever got an approval that was deemed consistent." *Id.* Based on the evidence in the record, a jury may be able to find that Mr. Shapiro did not give the Costco application a fair review because of his animus towards Mr. Cooke. *See Proctor* 846 F.3d at 608 ("Credibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")
(quoting *Kaytor*, 609 F.3d at 545 and *Reeves*, 530 U.S. at 150).

A jury could find that the third element is met, because Plaintiffs lost the potential
proceeds from the execution of the Option Contract.[5] Plaintiff did not need an actual breach of
contract to suffer actual loss. *See Herman v. Endriss*, 187 Conn. 374, 376–77 (1982) ("A plaintiff
may recover damages for tortious interference with a contract not only where the contract is
thereby not performed; 4 Restatement (Second), Torts § 766; but also where the interference
causes the performance 'to be more expensive or burdensome . . . .' *Id*., § 766A. '[I]t is not
essential to the cause of action that the tort has resulted in an actual breach of contract.'").

Accordingly, the motion for summary judgement as to the tortious interference with
business expectancies claim will be denied.

### D.  The Civil Conspiracy Claim

"The requisites of a civil action for conspiracy are: (1) A combination between two or
more persons; (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful
means; (3) an act done by one or more of the conspirators pursuant to the scheme and in
furtherance of the object; (4) which act results in damage to the plaintiff." *Williams v. Maislen*,
116 Conn. 433, 456 (Conn. 1933); *Harp v. King*, 266 Conn. 747, 779 (2003). Instructive here is
*Jones v. O'Connell*, 189 Conn. 648, in which Plaintiffs also alleged tortious interference with
business expectancy as well as civil conspiracy. In finding that the tortious interference claim
failed because there was no malicious intent, the court found that the civil conspiracy claim also
failed because defendants committed no underlying unlawful act. *See id.* at 662 ("The illegal acts

---

[5] "In March 2015 the parties entered into an Option Purchase Agreement ("Option Contract") for purposes of such development. The purchase price for the Cooke Property was $5,598,901.70, and the purchase was contingent upon Orchard Hill receiving the necessary local, state and federal approvals" Pl. Statement of Facts at 3, ECF No. 123.

upon which the plaintiffs rely to establish a civil conspiracy are the very acts which we have already found not to be improper."). Similarly, here, if a jury were to find that Defendants acted with a malicious intent, then the jury could also find that Defendant committed a lawful act by criminal or unlawful means.

Defendants argue that Plaintiffs' claim of civil conspiracy fails because they committed no underlying unlawful act. Mot. for Summary J. at 23.

In response, Plaintiffs argue that because they have a viable claim of tortious interference with a business expectancy, they also have a viable claim of civil conspiracy. Pl. Mem. at 28. They argue that they have present sufficient evidence for a jury to find that Shapiro and Ross "acted together to pursue their unlawful scheme of undermining the COSTCO Application[.]" *Id.* at 29.

The Court agrees.

First, sufficient evidence exists for a jury to find that two people, namely Mr. Shapiro and Ms. Ross, were working together. *See, e.g.*, *LBI, Inc. v. Charles River Analytics, Inc.*, No. CV126018984S, 2020 WL 3816124, at *5 (Conn. Super. Ct. May 26, 2020) ("The jury could have reasonably found, based on the evidence, that the defendant did conspire to deprive the plaintiff of further work . . . .").

Second, factual disputes exist as to whether Defendants Shapiro and Ross worked together to commit the following unlawful act: to sabotage the Inlands and Wetlands application because they were retaliating against Cooke for his protected speech against DaRos. *See id.* (recognizing that it is proper for a jury to resolve the underlying issues "when it is apparent there is some evidence upon which the jury may reasonably . . . reach[ ] their conclusions")

Third, a jury must decide if Mr. Shapiro and Ms. Ross conspired to sabotage the

application, mainly by interfering with the M&M peer review process. The evidence presenting

about the M&M process presents factual issues as to whether M&M was steered by Defendants

toward denying the application. Fourth, similar to the third element in the tortious interference

claim, because Plaintiffs lost the potential proceeds from the execution of the Option Contract, a

jury could find that Plaintiffs suffered damage resulting from Defendants' actions. *See e.g.*

*Weber v. FujiFilm Med. Sys. U.S.A., Inc.*, 854 F. Supp. 2d 219, 238 (D. Conn. 2012), *aff'd sub*

*nom. Weber v. Tada*, 589 F. App'x 563 (2d Cir. 2014) (finding that because "[Plaintiff] has

joined his civil conspiracy claim with his substantive tort claims [a tortious interference claim],

and as discussed above, these tort claims remain for adjudication," there also was sufficient

evidence to proceed to trial on the civil conspiracy claim).

      Accordingly, the motion for summary judgement as to the civil conspiracy claim will be

denied.

## IV.    CONCLUSION

      For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED in**

**part** and **DENIED in part.**

      Summary judgement is **GRANTED** as to the equal protection claim.

      Summary judgement is **DENIED** as to the First Amendment retaliation claim, the

tortious interference with business expectancies claim, and the civil conspiracy claim.

      SO ORDERED at New Haven, Connecticut, this 8th day of December, 2023.

                         /s/ Victor A. Bolden
                         VICTOR A. BOLDEN
                         UNITED STATES DISTRICT JUDGE