**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

WAYNE COOKE,
*individually and as Trustee of the Wayne
Cooke Family Trust*;
THE NF&W COOKE, *Limited Partnership
        Plaintiffs*,

v.

DANIEL SHAPIRO,
*Individually and in his official capacity*;
DIANA ROSS,
*Individually and in her official capacity*,
        *Defendants.*

No. 3:19-cv-371 (VAB)

**RULING AND ORDER ON MOTIONS *IN LIMINE***

Daniel Shapiro and Diana Ross, in their individual and official capacities, (collectively,

"Defendants") have filed five (5) motions *in limine* seeking to preclude the introduction of five

(5) different sources or types of testimony and evidence during the upcoming jury trial in this

case. *See* Mot. *in Limine* to Preclude Plaintiffs from Testifying or Introducing Any Evidence

That Is Any Way Related to Previous Two Civil Actions, ECF No. 146 (Jan. 26, 2024) ("MIL

Re. Lawsuits"); Mot. *in Limine* to Preclude Plaintiffs from Testifying or Introducing Any

Evidence Concerning Personal Communications, ECF No. 147 (Jan. 26, 2024) ("MIL Re.

Personal Communications"); Mot. *in Limine* to Preclude Plaintiffs from Testifying or

Introducing Any Evidence Concerning Any Milone & Macbroom Pleadings, ECF No. 148 (Jan.

26, 2024) ("MIL Re. M&M"); Mot. *in Limine* to Preclude Testimony and/or Evidence re

Privileged Communications by Town Attorney William A. Aniskovich, ECF No. 154 (Feb. 14,

2024) ("MIL Re. Town Attorney"); Mot. *in Limine* to Preclude Testimony and/or Evidence

Concerning Attorney Client and/or Privileged Communications by Thomas P. Cody, ECF No. 155 (Feb. 15, 2024) ("MIL Re. Costco Attorney").

Wayne Cooke and the NF&W Cooke Limited Partnership (collectively, "Plaintiffs") object to these motions. *See* Obj. to Mot. *in Limine* to Preclude Plaintiffs from Testifying or Introducing Any Evidence That Is Any Way Related to Previous Two Civil Actions, ECF No. 150 (Feb. 9, 2024) ("Obj. Re. Lawsuits"); Obj. to Mot. *in Limine* to Preclude Plaintiffs from Testifying or Introducing Any Evidence Concerning Personal Communications, ECF No. 151 (Feb. 9, 2024) ("Obj. Re. Personal Communications"); Obj. to Mot. *in Limine* to Preclude Plaintiffs from Testifying or Introducing Any Evidence Concerning Any Milone & Macbroom Pleadings, ECF No. 152 (Feb. 9, 2024) ("Obj. Re. M&M"); Obj. to Mot. *in Limine* to Preclude Testimony and/or Evidence re Privileged Communications by Town Attorney William A. Aniskovich, ECF No. 161 (Feb. 22, 2024) ("Obj. Re. Town Attorney"); Obj. to Mot. *in Limine* to Preclude Testimony and/or Evidence Concerning Attorney Client and/or Privileged Communications by Thomas P. Cody, ECF No. 162 (Feb. 22, 2024) ("Obj. Re. COSTCO Attorney").

For the following reasons, the Defendants' motions *in limine* are **GRANTED in part and DENIED in part** without prejudice to renewal at trial.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The following allegations are listed as Plaintiffs' Contentions in the parties' Joint Trial Memorandum:

> Defendant Daniel Shapiro (who was the Chairman of the Town of Branford's Inland Wetlands Commission) and Defendant Diana Ross (who was Director of the Town of Branford's Inland Wetlands and Natural Resources Department, which is also known as the

Inland Wetlands Agency, and was the staff serving the Commission), acted together knowingly and intentionally to interfere with the business relationship the plaintiffs had with an entity known as Orchard Hill Partners, LLC. This business relationship involved an Option Contract for the sale of property known as the "Cooke Property," which at all relevant times was owned by Plaintiff NF&W Cooke Limited Partnership (the "Cooke Partnership"). The Wayne Cooke Family Trust (the "Cooke Trust") is the limited partner of the Cooke Partnership, and plaintiff Wayne Cooke is a beneficiary of the Cooke Trust.

The Option Contract was for a sale of the Cooke Property to Orchard Hill for the purchase price of $5,598,901.70 so that a COSTCO store could be built there, but that sale could only take place and the project could only move forward on the Cooke Property only if COSTCO obtained the necessary municipal approvals in the Town of Branford, including a wetlands permit from the Commission. A sale of the Cooke Property would have benefitted plaintiffs by way of the millions of dollars in proceeds from the sale.

The two defendants sought to sabotage the COSTCO wetlands application that was pending before the Commission by improperly and surreptitiously making a series of alterations to a peer review report that was being prepared for the Commission by an engineering firm named Milone & MacBroom – a report which was supposed to be an independent report prepared for the Commission to consider when reviewing the COSTCO's application (the "COSTCO Application"). The defendants intentionally took these actions in order to lay the groundwork for a denial of the COSTCO Application by the Commission while, at the same time, concealing they were doing that, thereby scuttling the COSTCO project meant for the Cooke Property. The defendants' actions caused COSTCO to withdraw its application because COSTCO clearly understood that it could not receive a fair hearing before the Commission as a result of the defendants' actions. In addition to denying COSTCO a fair hearing before the Commission, the defendants' interference was without justification because it was due to tremendous animosity the defendants harbored against Plaintiff Wayne Cooke - animosity that arose from his public criticism of Former First Selectman Anthony DaRos, the DaRos administration and other Town officials (including members of the Commission), Wayne Cooke's prior dealings and litigation against the Town about the Cooke Property, and the defendants' personal dislike and antagonism towards Cooke. Moreover, both defendants were strongly aligned with the DaRos administration.

> Once the COSTCO wetlands application was withdrawn, the Option
> Contract was nullified, causing the plaintiffs to lose the millions of
> dollars they otherwise would have received from a sale of the Cooke
> Property. This loss of money serves as the basis for the plaintiffs'
> claim for compensatory damages in this case. The plaintiffs also
> claim that they are entitled to punitive damages due to the
> defendants' reckless and outrageous behavior.

Joint Trial Mem. ¶ 6, ECF No. 149 (Jan. 26, 2024).

Defendant's Contentions are that "Diana Ross and Daniel Shapiro did not tortiously interfere with Plaintiffs' business expectancies, and because there is no underlying tort, there can be no conspiracy." *Id*. ¶ 7.

### B. Procedural History

The Court assumes familiarity with the procedural history of the case and includes only events relevant to the motions *in limine*. *See* Ruling and Order on Mot. for Summ. J., ECF No. 134 (Dec. 8, 2023).

On December 8, 2023, the Court granted in part and denied in part Defendants' motion for summary judgment. *See* Order on Mot. for Summ. J., ECF No. 134.

On January 5, 2024, Defendants filed a notice of interlocutory appeal based on the denial of qualified immunity. *See* Not. of Interlocutory Appeal, ECF No. 136.

On January 9, 2024, Defendants moved to stay pending resolution of the interlocutory appeal of qualified immunity. *See* Mot. to Stay, ECF No. 138.

On January 16, 2024, Plaintiffs objected to the motion to stay. *See* Obj. to Mot. to Say, ECF No. 141.

On January 22, 2024, the Court granted in part and denied in part the motion to stay; the Court granted the motion with respect to the First Amendment claim and denied the motion to

4

with respect to the state law claims (tortious interference of business expectancy and civil

conspiracy). *See* Order, ECF No. 144.

On January 26, 2024, Defendants filed three (3) motions *in limine*. *See* MIL Re.

Lawsuits; MIL Re. Personal Communications; MIL Re. M&M.

On February 9, 2024, Plaintiffs filed their objections to the three motions. *See* Obj. Re.

Lawsuits; Obj. Re. Personal Communications; Obj. Re. M&M.

On February 14 and 15, 2024, Defendants filed two additional motions *in limine*. *See*

MIL Re. Town Attorney; MIL Re. COSTCO Attorney.

On February 22, 2024, Plaintiffs filed objections to the latest two motions. *See* Obj. Re.

Town Attorney; Obj. Re. COSTCO Attorney.

On February 16, 2024, Defendants filed replies to Plaintiffs' first three objections and on

February 23, 2024, Defendants filed replies to Plaintiffs' last two objections. *See* Reply to Obj.

to Mot. *in Limine* to Preclude Plaintiffs from Testifying or Introducing Any Evidence That Is

Any Way Related to Previous Two Civil Actions, ECF No. 157 (Feb. 16, 2024) ("Reply Re.

Lawsuits"); Reply to Obj. to Mot. *in Limine* to Preclude Plaintiffs from Testifying or Introducing

Any Evidence Concerning Personal Communications, ECF No. 158 (Feb. 16, 2024) ("Reply Re.

Personal Communications"); Reply to Obj. to Mot. *in Limine* to Preclude Plaintiffs from

Testifying or Introducing Any Evidence Concerning Any Milone & Macbroom Pleadings, ECF

No. 159 (Feb. 16, 2024) ("Reply Re. M&M"); Reply to Obj. to Mot. *in Limine* to Preclude

Testimony and/or Evidence re Privileged Communications by Town Attorney William A.

Aniskovich, ECF No. 163 (Feb. 23, 2024) ("Reply Re. Town Attorney"); Reply to Obj. to Mot.

*in Limine* to Preclude Testimony and/or Evidence Concerning Attorney Client and/or Privileged

Communications by Thomas P. Cody, ECF No. 164 (Feb. 23, 2024) ("Reply Re. COSTCO Attorney").

On February 28, 2024, the Court held a pre-trial conference, in which it discussed the pending motions *in limine* with the parties. *See* Minute Entry, ECF No. 166.

## II.     STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

## III.     DISCUSSION

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 ("Rule 401"). "Irrelevant evidence is not admissible." Fed. R. Evid. 402 ("Rule 402"). Relevant evidence, however, is still subject to Federal Rule of Evidence 403, which provides that, although relevant, evidence may be excluded

"if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 ("Rule 403"). Unfair prejudice under Rule 403 "may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (citation omitted). To warrant excluding evidence under Rule 403, "[t]he prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *Id.*

### A. Evidence Related to Past Litigation and this Case's First Amendment Claim

Defendants' first motion *in limine* seeks to preclude evidence and testimony related to prior lawsuits brought by Mr. Cooke in 2013 against the then-First Selectman Anthony DaRos and evidence and testimony related to Mr. Cooke's First Amendment retaliation clam. *See* MIL Re. Lawsuits.

Defendants argue that Mr. Cooke signed a release which "discharges all past present and future employees of the Town of Branford from any liability 'in any way related to' claims asserted" in two lawsuits brought by Mr. Cooke against Anthony DaRos in 2013. *Id.* at 5–6. They claim Mr. Cooke made the same claims in these lawsuits that he brought in 2013 that Plaintiffs make here and "[t]o permit Plaintiff introduce [sic] any evidence regarding factual allegations pertaining to any animus that DaRos may or may not have towards Mr. Cooke, would fly in the face of the executed release[.]" *Id.* at 7. In addition, Defendants argue that "Plaintiffs should be precluded from introducing any evidence that relates to their First Amendment retaliation claim which is currently on appeal with the Second Circuit" because "[t]o allow

Plaintiffs the ability to introduce any evidence at trial concerning whether the Defendants actions were in retaliation to Mr. Cooke's exercise of his first amendment rights would permit plaintiff the ability to put on a case for a constitutional claim that has been stayed and is pending appeal."

Plaintiffs argue that "evidence related to the prior lawsuits is highly relevant and probative, and the release executed by Cooke does not prohibit introduction of any evidence regarding animosity between Cooke and Town Officials." Obj. Re. Lawsuits at 2 (capitalizations edited).

First, they argue that the elements of a tortious interference with business expectancy claim requires Plaintiffs to "introduce evidence to demonstrate that Defendants acted 'without justification' by seeking to sabotage the COSTCO wetlands application." *Id.* at 3. Plaintiffs claim the evidence Defendants seek to preclude is highly relevant and probative because "a significant aspect of Plaintiffs' claim is that Defendants harbored animosity towards Cooke due to their allegiance to DaRos, so there is a direct link between his animosity towards Cooke and Plaintiffs' claims that Defendants acted 'without justification.'" *Id*. at 4.

Second, Plaintiffs argue that the Court already rejected arguments from Defendant that the Release bars Plaintiffs' First Amendment claim, so it cannot be used to undermine the state law claims. *Id.* at 4–5. As to the First Amendment retaliation claim that has been stayed, Plaintiffs argue that only the qualified immunity issue is on appeal and its reasonableness analysis is not required for a tortious interference with business expectancy claim or a civil conspiracy claim, "[n]or does the federal doctrine of qualified immunity even apply to Plaintiffs' state law claims." *Id.* at 5–6.

Defendants further argue in their reply that "[w]hat Plaintiffs are asking this court to do is ignore the release and settlement agreement and to allow them to introduce evidence regarding

claims that Plaintiff of his own free will release. It is plaintiffs' burden to prove that Mr. Shapiro
or Ms. Ross tortiously interfered with Plaintiffs' business expectancies, that does not mean the
release and settlement agreement gets ripped up and disregarded because the released claims
support their theory[.]" Reply Re. Lawsuits at 5. Defendants also point to a previous discovery
order from this Court that did not allow Plaintiff to seek discovery related to the past lawsuits
from three non-party individuals, and Defendants argue that this supports their argument that
evidence related to the prior lawsuits is prejudicial and irrelevant. *Id*. at 4.

The Court disagrees.

To prove tortious interference with business expectancy, Plaintiffs must prove three (3)
elements: "(1) a business relationship between the plaintiff and another party; (2) the defendant's
intentional interference with the business relationship while knowing of the relationship; and (3)
as a result of the interference, the plaintiff suffers actual loss." *Am. Diamond Exch., Inc. v.
Alpert*, 101 Conn. App. 83, 90 (2007) (quoting *Hi–Ho Tower, Inc. v. Com–Tronics, Inc*., 255
Conn. 20, 27 (2000)). The second element requires Plaintiffs to prove "that the defendant was
guilty of fraud, misrepresentation, intimidation or molestation; or that the defendant acted
maliciously." *Jones v. O'Connell*, 189 Conn. 648, 660 (1983) (internal citations and quotations
omitted). As Plaintiffs point out, a portion of the evidence arguably related to showing malice
"consists of text messages by Defendant Daniel Shapiro ("Shapiro") showing that he harbored
tremendous animosity towards Cooke, in part, due to Shapiro's awareness of disputes between
Cooke and Town of Branford (the "Town") officials that gave rise to the Prior Lawsuits,
including Cooke's disputes with DaRos." Obj. Re. Lawsuits at 4. While the Court will not allow
Plaintiffs to show filings or pleadings from the prior lawsuits or the First Amendment retaliation
claim, to the extent the knowledge of existence of the prior lawsuits provides evidence of

9

animus, the Court will permit its admission. *Cf. Fink v. Golenbock*, 680 A.2d 1243, 1249 (Conn. 1996) (noting how the trial court denied defendant's "motion *in limine* to preclude the introduction of evidence relating to the claims previously adjudicated at the arbitration").

Defendants' argument that the Court's previous order on discovery demonstrated relevance or irrelevance is inapposite here—the Court was concerned about the burden to a third-party and how much it would slow down this already delayed case—in fact, the Plaintiff seemingly sought discovery on the lawsuits because it may have helped provide proof for their claim. *See* Minute Entry for proceedings held before Judge Victor A. Bolden, ECF No. 105 (Apr. 6, 2022) ("[T]here is no basis to require a non-party to search for documents related to this lawsuit. . . . Any documents regarding the motivations of the actions of the governmental defendants should be readily available through the discovery process and through the Defendants in this case.").

Accordingly, the Defendants' motion to preclude testimony and evidence related to the prior lawsuits and the First Amendment retaliation claim will be denied.

### B. Evidence Related to Communication between Daniel Shapiro and Sophie Lee

Defendants seek to preclude evidence of text message communications between Daniel Shapiro and Sophie Lee, a woman with whom Mr. Shapiro had a personal relationship because they argue that its potential prejudicial effect outweighs its probative value. MIL Re. Personal Communications at 4. They argue that the text messages are irrelevant to "whether Mr. Shapiro had any animus towards Mr. Cooke" and "these communications would unduly arouse the juror's hostility and would create a side issue that would unduly distract the jury from relevant evidence." *Id.* at 5. Defendants further argue in their reply that "[t]hese text messages are in no way relevant to the issue of whether the intentional interference was without justification" and

10

that it "has no bearing on this lawsuit other than to embarrass the Defendants, and to distract the jury from the relevant issues in this case." Reply Re. Personal Communications at 3.

Plaintiffs argue that the text messages are highly probative of Mr. Shapiro's animus towards Mr. Cooke and of his willingness to undermine the COSTCO application. Obj. Re. Personal Communications at 5–7. Plaintiffs also argue Defendants' suggested redactions for the text messages remove essentially all of the substantive language. *Id.* at 6.

The Court agrees.

For the same reasons described in the previous section, the text messages are relevant to and probative of Plaintiffs' claim because they provide insight into whether Mr. Shapiro harbored animosity towards Mr. Cooke. *See e.g. Jones v. O'Connell*, 189 Conn. at 660 (Plaintiffs must prove that "defendant was guilty of fraud, misrepresentation, intimidation or molestation; or that the defendant acted maliciously").

**Accordingly, the Defendants' motion to preclude the personal communications between Mr. Shapiro and Ms. Lee will be denied.**

### C.  Evidence As to Milone & MacBroom-Related Matters

Defendants seek to preclude evidence that the claims against Milone & MacBroom ("M&M") have been settled or dismissed and if testimony or evidence is introduced that M&M was once a defendant, it would "unduly arouse the juror's suspicions and would crease a side issue that would unduly distract the jury from relevant evidence." MIL Re. M&M.

Plaintiffs argue that Defendants motion should be denied or postponed until any such evidence is sought to be introduced because such evidence may be used for impeachment purposes of the witnesses who are testifying as M&M employees. Obj. Re. M&M at 1.

The Court agrees, in part.

M&M's previous status as a party to this litigation—one who subsequently settled—is not sufficiently relevant, without raising concerns of "confusing the issues." *See* FRE 403 (permitting the exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues . . . ."). Moreover, evidence with respect to compromise offers and negotiations are generally not "admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction . . . ." FRE 408(a); *see, e.g.*, *Van Wart v. Allstate Ins. Co.*, No. CV 94045332S, 1997 WL 80657, at *2 (Conn. Super. Ct. Feb. 7, 1997) (noting that Fed. R. Evid. 408 "bars admission of settlements as evidence on the issue of liability or causation. Well established case law and the Federal Rules of Evidence prohibit the introduction of settlements or settlement negotiations into evidence to prove liability."" (citations omitted)). As a result, any litigation brought by and subsequently settled by M&M does not seem sufficiently relevant to the case to be heard by the jury now, and therefore should be excluded.

The express language of Rule 408, however, does provide an exception "when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority." FRE 408(a)(2). But without more, it is not clear that this limited exception would apply here, or that impeachment would be appropriate as to any settlement. *Cf. Van Wart v. Allstate Ins. Co.*, 1997 WL 80657, at *2 (ruling "that the plaintiff for impeachment purposes may refer to and offer evidence about the fact that Allstate settled the claim against Forster, and that it insured Forster and thus she had a connection with Allstate which may relate to possible bias or motive in her testimony. This ruling stands as to impeachment purposes only.")

12

Accordingly, the Court will grant Defendants' motion to preclude evidence generally concerning M&M pleadings, settlement, or dismissal. To the extent, however, that M&M employees testify about their relationship with Plaintiffs, such evidence may be allowed for the limited purpose of impeachment and the motion is denied without prejudice to renewal at trial.

### D.  Evidence Related to Town Attorney William A. Aniskiovich

The Connecticut Supreme Court has stated:

> On numerous occasions we have reaffirmed the importance of the attorney-client privilege and have recognized the long-standing, strong public policy of protecting attorney-client communications . . . . In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice. . . . The privilege fosters full and frank communications between attorneys and their clients and thereby promote[s] the broader public interests in the observation of law and [the] administration of justice. We note further that [a]lthough the existence of the privilege encourages the candor that is necessary for effective legal advice . . . the exercise of the privilege tends to prevent a full disclosure of the truth in court. Therefore, the privilege is strictly construed.
>
> Not every communication between client and attorney, however, is protected by the attorney-client privilege. As a general rule, [c]ommunications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice. A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice. The burden of proving each element of the privilege, by a fair preponderance of the evidence, rests with National, as it is the party seeking to assert the privilege.

*PSE Consulting, Inc. v. Frank Mercede & Sons, Inc*., 838 A.2d 135, 166–67 (Conn. 2004) (citations and internal quotations omitted). Connecticut law states that "[i]n any civil or criminal case or proceeding or in any legislative or administrative proceeding, all confidential communications shall be privileged and a government attorney shall not disclose any such

communications unless an authorized representative of the public agency consents to waive the privilege and allow such disclosure." Conn. Gen. Stat. Ann. § 52-146r.

Defendants seek to preclude (1) any testimony of Town of Branford Attorney William Aniskiovich, (2) any evidence that the Town hired outside counsel for legal advice and to draft a report regarding the inlands and wetlands commission's review of the COSTCO Applications, and (3) any evidence that such a report exists. MIL Re. Town Attorney at 1. Defendants argue that attorney-client privilege protects disclosure of communications to an attorney for a public agency. *Id*. at 5. Defendants contend that "[t]o permit Plaintiffs to introduce any evidence at trial concerning the draft report, and/or engagement letters, retainer agreements, and billing records from an attorney hired by the Town for legal advice, would not only fly in the face of public policy against the disclosure of attorney client privileged communications, but would be contrary to well settled Connecticut case law protecting communications from attorney's hired by municipalities for legal advice." *Id.* at 7.

Plaintiffs argue that Defendants motion should be denied because "1) it is untimely; 2) Defendants lack standing to assert the attorney-client privilege on behalf of the Town of Branford (the 'Town'); and 3) Defendants seek to preclude evidence that is not – or may not be – subject to preclusion either based on the attorney-client or work product privilege." Obj. Re. Town Attorney at 1. Plaintiffs contend that "a blanket preclusion" is not appropriate. *Id*. at 5.

The Court agrees.

While the Defendants do not lack standing to assert the attorney-client privilege, Defendants are not seeking to preclude the communications themselves, but rather any evidence that such communications took place. At this time, such a broad preclusion is not appropriate. *See, e.g.*, *Deutsche Bank AG v. Sebastian Holdings, Inc*., 294 A.3d 1, 23–24 (Conn. 2023)

(reviewing a trial court's ruling drawing a fine line between privileged (and inadmissible) attorney-client communications and admissible testimony, and determining that the trial court's ruling "did not preclude [witness] from testifying as to the timing of his decision to set up a family trust; nor did it preclude him from testifying that some of the October transfers were made for the purpose of funding the trust. The ruling precluded [the witness] from introducing documentary evidence that he previously claimed was privileged to bolster his testimony.").

The Court will not allow, however, any legal documents themselves, (e.g., draft reports, engagement letters, retainer agreements, billing records, etc.) to be admitted.

Accordingly, the Defendants' motion to preclude will be denied, without prejudice to renewal at trial.

### E.  Evidence Related to Thomas P. Cody.

Defendants seek to preclude "any evidence at trial concerning attorney client and/or privileged communications by way of testimony from Thomas P. Cody, Esq. who represented Costco throughout the Inland and Wetlands Applications process[.]" MIL Re. Costco Attorney at 1. They argue that any "communications involving Costco seeking legal advice from their retained attorney pertaining to the Costco Inland and Wetlands application . . . are clearly protected by attorney client and/or privileged communications to which no exceptions apply." *Id*. at 4.

Plaintiffs argue that Defendants' motion should be denied because "1) it is untimely; 2) Defendants lack standing to assert the attorney-client privilege on behalf of COSTCO; and 3) Defendants seek to preclude evidence that may not be subject to preclusion based on the attorney-client privilege." Obj. Re. Costco Attorney at 1. Plaintiffs argue that Defendants do not

hold the privilege and that "[it] will be up to Cody, as COSTCO's attorney, to claim a privilege on behalf of COSTCO at trial if he believes it is appropriate to do so." *Id.* at 3.

The Court agrees.

Unlike the town attorney, here Defendants lack standing to assert attorney-client privilege. *See Woodbury Knoll, LLC v. Shipman & Goodwin, LLP*, 48 A.3d 16, 33 (Conn. 2012) ("[t]he power to waive the attorney-client privilege rests with the client or with his attorney acting with his authority") (citing *Gebbie v. Cadle Co*., 714 A.2d 678, 683 (Conn. App 1998); *see also Greenan v. Cohen*, No. FSTCV136017645S, 2014 WL 7462564, at *4 (Conn. Super. Ct. Nov. 18, 2014) ("The court finds that the three non-party attorneys do not have standing to invoke the attorney-client privilege on behalf of the plaintiff.").

Accordingly, the Defendants' motion to preclude will be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motions *in limine* are **GRANTED in part** and **DENIED in part**.

**SO ORDERED** at New Haven, Connecticut, this 2nd day of March, 2024.

       /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge